UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CENTRAL INDIANA REGIONAL BLOOD CENTER, INC., | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 09 cv 1009 |
| ORTHO-CLINICAL DIAGNOSTICS, INC., | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendant Ortho-Clinical Diagnostics, Inc. ("Ortho"), for its Memorandum of law in Opposition to Plaintiff's Motion for Preliminary Injunction, states as follows:

**PRELIMINARY STATEMENT AND BACKGROUND FACTS**

Ortho is engaged in the screening, diagnosing, monitoring and confirming of diseases by developing, manufacturing, and distributing certain disease testing supplies and equipment. One such disease for which Ortho has developed a successful test is the *Trypanosoma cruzi* ("T. cruzi") disease. Ortho and a group purchasing organization, the GSABC Cooperative Association ("GSABC"), entered into a group purchasing agreement ("Agreement") by which Ortho sells the T. cruzi test, along with others, at prices below market rate in exchange for a guaranteed volume of consumption by the participants who are bound by the Agreement by individual letters of commitment. Plaintiff, Central Indiana Regional Blood Center, Inc. d/b/a Indiana Blood Center ("IBC"), is one such participant and signatory to its own letter of commitment ("LOC").

Ortho discovered IBC has been in violation of the terms of the Agreement and its LOC. On July 24, 2009, pursuant to the Agreement, Ortho provided notice to IBC of its breach and

informed IBC that it intended to revoke IBC's status as a participant under the Agreement, unless IBC cured its default within the 30 days, as proscribed by the Agreement. IBC filed the instant action on August 17, 2009, along with a Motion for Preliminary Injunction. IBC does not assert a cause of action for breach of contract, as the parties are obligated to resolve such dispute through private mediation and binding arbitration pursuant to the Agreement and LOC. Thus, the only "claim" before the court is Plaintiff's request for a preliminary injunction seeking to bar Ortho from exercising its right to revoke IBC's status as a participant and terminate the LOC due to IBC's breach.

IBC is unable to meet its burden of demonstrating that it is entitled to a preliminary injunction. For the foregoing reasons, Ortho respectfully requests the Court deny IBC's motion and dismiss Plaintiff's suit in its entirety.

## ARGUMENT

**I. Applicable Legal Standards To The Award Of A Preliminary Injunction**

"A preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008); *see also Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir. 1986) ("While preliminary injunctions are an equitable, interlocutory form of relief, they are an exercise of very far-reaching power, and one in which the stakes are sufficiently high to make mistakes very costly.") (internal citations and quotes omitted). As such, there is no "right" to a preliminary injunction. *Lawson Prods.*, 782 F.3d at 1435.

In order to determine whether a case warrants a preliminary injunction, district courts within the Seventh Circuit must conduct two distinct phases of analysis: a threshold phase and a balancing phase. *Girl Scouts*, 549 F.3d at 1085-86. At the threshold phase, the court considers

2

whether the movant has established three requirements: (1) a likelihood of success on the merits; (2) the threat of irreparable harm; and (3) a lack of an adequate legal remedy, *i.e.*, that monetary damages will be insufficient to redress its injury. *Id*. The movant bears the burden of establishing each of these elements. *American Dairy Queen Corp. v. Brown-Port Co.*, 621 F.2d 255, 257 (7th Cir. 1980). Failure to meet any of the requirements at the threshold stage will end the analysis, and the preliminary injunction must be denied. *Girl Scouts*, 549 F.3d at 1086; *see also Praefke Auto Elec. & Battery Co., Inc. v. Tecumseh Prods. Co., Inc.*, 255 F.3d 460, 462 (7th Cir. 2001) (finding failure to demonstrate irreparable harm warranted denial of preliminary injunction "on this ground alone").

If, <u>and only if</u>, the movant establishes all of the requirements of the threshold phase, can the court then proceed to the balancing phase. At the balancing phase, the court attempts to minimize the cost of potential error by balancing "the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the 'wild card' that is the public interest." *Girl Scouts*, 549 F.3d at 1086 (quoting *Lawson Prods., 7*82 F.2d at 1433). After taking into consideration the outcome of the balancing phase, the court must exercise its discretion to determine whether a preliminary injunction is warranted, given "the import of the various factors and a personal, intuitive sense about the nature of the case." *Id*.

Additionally, in determining whether a preliminary injunction is warranted, the court must limit its focus to the period to be covered by the injunction. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) ("And bear in mind we are concerned only with the period between now and the entry of a final judgment; it is only these interim losses that are relevant in deciding whether [plaintiff] is entitled to a preliminary injunction."); *see also Lawson*

*Prods.*, 782 F.2d at 1440 (affirming denial of preliminary injunction where movant could not show irreparable harm "during the period between the denial of the motion and trial"). Thus, a court should not take into account potential or speculative harm that reaches beyond the period covered by the preliminary injunction.

## II. IBC Is Not Entitled To A Preliminary Injunction Because It Cannot Carry Its Burden At The Threshold Phase.

### A. IBC Cannot Demonstrate That It Is Likely To Prevail On The Merits.

To obtain a preliminary injunction, a movant first must establish a likelihood of success on the merits. *Girl Scouts*, 549 F.3d at 1085-86. Although the burden is not an onerous one, a movant must establish a "better than negligible chance" of success. *Roland*, 749 F.2d at 387. Simply because the threshold is not onerous does not mean, however, that movants with the barest of claims are entitled to injunctions. *See Sofinet v. Immigration and Naturalization Service*, 188 F.3d 703, 707 (7th Cir. 1999) (stating that although the burden is light, it "does not mean, of course, that applicants for interim injunctive relief with relatively weak cases will always obtain injunctions. The less compelling the case on the merits, the greater the showing of irreparable harm must be."). IBC cannot demonstrate the necessary likelihood of success on the merits, because it readily admits to engaging in conduct which constitutes a violation of the Agreement, and its wavier argument is without merit.

#### 1. IBC Admits It Uses The Testing Kits On Behalf Of Entities Other Than Those Permitted By The Agreement.

IBC admits it uses the testing kits acquired from Ortho to test the blood of other blood centers and medial service companies. (Pls. Mem. at p. 3). IBC argues, incorrectly, that it is permitted to do so under the Agreement because it is not reselling the testing kits to these outside companies. (Pls. Mem. at p. 7). However, the language of the provision at issue - ¶ 3.14 entitled

4

"Own Use" ("Own Use Provision") - is intended to prevent IBC and other participants from competing with or undercutting Ortho. The Own Use Provision establishes that participants are restricted from doing *two* things: making the product (testing kits) available for use by or on behalf of anyone other than the participant's own inpatients and outpatients, staff, employees, and students and their dependents; or reselling the products.[1] The two restrictions contained in the Own Use Provision are exclusive of one another. The second sentence, that participants may not resell the units, does not limit the first sentence, that the testing kits may not be used by or on behalf of entities other than those specifically enumerated. IBC's argument to the contrary is without merit.

IBC argues that because it at all times maintains possession of the physical tests, i.e., it does not actually exchange the physical test for compensation, it is not in violation of the Own Use Provision. (Pls. Mem. at p. 7). IBC admits, however, that it contracts with third parties to use the testing kits to test blood on behalf of, and for the benefit of, these third parties, and then delivers the testing results to the third parties in exchange for compensation. (Pls. Mem. at p. 7). IBC does not deny that these third parties are not "inpatients [or] outpatients, staff, employees, [or] students [or] their dependents." Agreement, ¶ 3.14. Thus, IBC is making available the product on behalf of entities other than those to which it is permitted to do so under the Agreement.

---

[1] As noted in IBC's Memorandum, the provision states in its entirety:
3.14. <u>Own Use</u>. The Customer shall cause each Participant to, make available units of Product solely by or on behalf of the Participant's inpatients and outpatients, staff, employees, and students and their dependents. The Customer shall cause each Participant not to resell units of any Product, including without limitation, in retail outlets or to any affiliate or any Participant.

Further, IBC offers a strained interpretation of the Own Use Provision by asserting that it does not "resell" the physical testing units themselves, i.e., IBC does not physically transfer the testing units to third parties in exchange for compensation. Rather, IBC sells its testing services, which necessarily incorporates the testing units. The reality is that the third parties are paying for the testing units, the use of IBC's equipment, and IBC's labor. Thus, IBC is selling these three elements as a package in exchange for compensation from third parties. The mere fact that IBC does not physically hand over the testing units themselves to third parties does not absolve them of their breach. Given these facts, IBC is unable to establish a likelihood of success on the merits of its underlying claim that it has not breached the Agreement and LOC.

        2.        The Agreement Contains An Enforceable Non-Waiver Provision.

IBC additionally argues that, should the Court find IBC violated the Own Use Provision by making the product available for the benefit of outside parties, IBC will still prevail on the merits because "the course of dealing of the parties" has been to allow such third party testing. (Pls. Mem. at p. 8). Critically, IBC fails to inform the Court that the Agreement contains an express Waiver Provision, ¶ 3.6, which states:

> No provision of this agreement may be waived except by a writing signed by the party against whom the waiver is sought to be enforced. No failure to enforce any provision of this agreement constitutes a waiver of future enforcement of that provision or any other provision in this agreement.

Courts regularly uphold such non-waiver provisions as valid and enforceable. *See MDG International, Inc. v. Australian Gold, Inc.*, 606 F.Supp.2d 926, 933 (S.D. Ind. 2009) (finding that pursuant to non-waiver clause, which provided that no failure or delay in enforcing right shall operate as a waiver of any right contained in the agreement, plaintiff had not waived provision that required defendant to maintain certain quotas); *see also Johnson v. Dawson*, 856 N.E.2d 769, 774-75 (Ohio.App. 2006) (finding "Nonwaiver clauses generally are enforced in

Indiana," and holding such clause applied with equal force in both two-party and multi-party agreements). Understandably, IBC completely ignores this Waiver Provision as it undermines their "course of dealing" argument. Nowhere does IBC allege that Ortho has executed any writing waiving its right to enforce the Own Use Provision, as no such writing exists. Therefore, even had Ortho failed to enforce the Own Use Provision against IBC or any other participant in the past, Ortho has not waived its right to enforce that provision now or in the future.

In sum, IBC admits it uses the testing kits for purposes other than its own use; it provides testing on behalf of and for the benefit of third parties, using the testing kits in exchange for compensation. The Own Use Provision in the Agreement expressly prohibits such use of the testing units. Ortho has not waived this provision, because such a waiver would require a signed writing to that effect pursuant to the Agreement's Waiver Provision. Not only does IBC not allege the existence of a written waiver, it ignores the Waiver Provision altogether. Therefore, IBC cannot meet its burden of proving a likelihood of success on the merits.

Even were the Court to conclude there is room for doubt on the underlying breach of contract claim, the Court still should deny the motion for a preliminary injunction because "when… there are two equally credible versions of the facts the court should be highly cautious in granting an injunction without the benefit of a full trial." *Lawson Prods.*, 782 F.2d at 1434-35. Thus, IBC's motion for a preliminary injunction should be denied in its entirety.

> **B.** **IBC Cannot Demonstrate Irreparable Harm And Lack Of An Adequate Remedy At Law.**

Although failure to prove a likelihood of success on the merits is grounds enough for denial of a preliminary injunction, IBC also fails to demonstrate it will suffer irreparable harm if the injunction is erroneously denied. A harm is "irreparable" if it cannot be prevented or fully rectified by the final judgment after trial. *Girl Scouts*, 549 F.3d at 1089. Lack of an adequate

legal remedy means that monetary damages must be "seriously deficient" to address plaintiff's injury. *Id.* at 1095. Irreparable harm and the lack of an adequate legal remedy are similar concepts, and in situations in which the only remedy sought at trial is damages, the two requirements "merge," and "[t]he question is then whether the plaintiff will be made whole if he prevails on the merits and is awarded damages." *Roland*, 749 F.2d at 386. Because IBC cannot demonstrate that it will suffer irreparable harm that lacks an adequate remedy at law in the relevant interim period, its motion for a preliminary injunction should be denied.

IBC does not allege, and cannot prove, that it will be unable to test blood samples for Chagas in the absence of injunctive relief. Ortho has never refused to sell the T. cruzi test directly to IBC in the absence of injunctive relief. To the contrary, Ortho has at all times communicated its willingness to negotiate with IBC for the purchase of the T. Cruzi test.

IBC merely argues that, without injunctive relief, it likely will have to pay a higher price for the T. cruzi tests if it must purchase them directly from Ortho, rather than through GSABC, which negotiates a discount for its members. IBC surmises that, because it will be required to pass along any increase in the price of the T. cruzi test to its customers, rather than absorb such price increase itself, IBC will lose some customers to competitors that offer a lower price for such testing. (Pls. Mem. at p. 9). Were IBC to lose some customers as a result of its decision to increase its prices, such harm would be purely monetary and easily measurable – the loss of revenue due to loss of sales. The potential harm suffered by IBC is mere monetary harm that is easily measured and, therefore, there is no irreparable harm to IBC.[2]

---

[2] Throughout its Motion, IBC acknowledges this mere monetary harm in the form of lost revenue. See, e.g., "IBC's customers will likely send Chagas testing to other testing centers because of such increase" (Pls. Mot. at p. 9); ". . . those revenues are an integral part of its financials" (Pls. Mot. at p. 10); " . . . the loss of associated revenues on which IBC reasonably relies to fund its operations." (Pls. Mot. at p. 10).

IBC argues in its Memorandum that it will suffer irreparable harm due to a loss of "goodwill, reputation and relationship" it has established with its customer base if the preliminary injunction does not issue. (Pls. Mem. at p. 9). IBC advances its "goodwill" theory on the grounds that it will "instantly lose credibility" with its customers by passing along the increase in price to its customers. (Pls. Mem. at p. 9). First, IBC's decision to pass along any potential cost increase to its customers is within IBC's control; it is not an inevitable result of a potential increase in the price of the T. cruzi test. Second, IBC's characterization of the potential loss of customers as lost "goodwill" is both inaccurate and insufficient to demonstrate irreparable harm that lacks an adequate remedy at law.[3] IBC, itself, acknowledges that "IBC's customers will likely send Chagas testing to other testing centers <u>because of such increase</u>," not because of a loss of "goodwill." By IBC's own admission, any loss of customers would be due to market forces – competitive organizations that can offer the same products/services at a lower cost.[4] The threat of lost business as an irreparable harm was considered by the Southern District of New York in *Ortho Diagnostics Sys., Inc. v. Abbott Labs., Inc.*, 822 F.Supp. 145, 151 (S.D.N.Y. 1993), a case which IBC cites in its Memorandum. The court in that case plainly stated that the "loss of customers [is] an injury which can be fully compensated by monetary relief," and thus is not irreparable harm lacking an adequate remedy at law. *Ortho Diagnostics*, 822 F.Supp. at 151.

---

[3] The migration of customers due to price fluctuations is not the sort of harm the Seventh Circuit considers loss of goodwill. *See, e.g.*, *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 902 (7th Cir. 2001) (finding loss of goodwill in damage to reputation by trademark infringement); *Abbott Labs., Inc. v. Mead Johnson & Co.*, 971 F.2d 6, 17 (7th Cir. 1992) (finding loss of goodwill where competitor's false advertising claims may linger in the minds of consumers); *Girl Scouts*, 549 F.3d at 1085 (finding loss of goodwill where community questioned local council's forced downsizing and ceased making charitable donations to council).

[4] IBC's loss of "goodwill" is no different from that suffered by any organization in a competitive environment that increases its prices and , as a result, loses some customers.

If it ultimately is determined on the merits that Ortho breached the Agreement or LOC, IBC easily could identify those customers that ceased purchasing services and products from IBC as a result of any price increase, and calculate IBC's lost revenue accordingly. *See id*. Because pure economic loss can be fully remedied by monetary damages at the conclusion of this case, this matter is not a case that "clearly demands" the application of the extraordinary power of a preliminary injunction. Therefore, the motion for a preliminary injunction should be denied.

### III. Because IBC Cannot Carry Its Burden At The Threshold Phase, The Court Should Not Progress To The Balancing Phase; Nonetheless, Such Balancing Favors Ortho As The Public Interest Will Not Be Harmed By The Denial Of A Preliminary Injunction.

Because IBC cannot meet its burden at the threshold phase, the Court should not proceed to the balancing phase, but instead should deny the motion for injunctive relief. *Girl Scouts*, 549 F.3d at 1086. Even were the Court to consider the balance of harms, the Court should find that the public interest will not be harmed by the denial of the motion for preliminary injunction, and that Ortho would be harmed by the granting of injunctive relief. For these reasons, in addition to the reasons detailed above, the Court should deny the motion for preliminary injunction.

#### A. The Public Interest Will Not Be Harmed By The Denial Of The Preliminary Injunction.

In passing, and without any support, IBC states that "the citizens of Indiana will suffer irreparable harm" if the preliminary injunction does not issue. IBC fails to provide the Court with any credible support for such an assertion. (Pls. Mem. at p. 11). IBC does not allege that its temporary inability to perform the T. cruzi test at the current, low price will result in unsafe blood being transmitted into the hospitals and homes of Indiana. Indeed, IBC alleges that the citizens of Indiana will continue to receive safe blood from sources other than IBC. (Pls. Mem. at p. 11-12). Further, by asserting that an increase in the price of the T. cruzi test will cause IBC

to lose customers to its competitors, IBC implicitly acknowledges that it operates in a competitive environment where other organizations can serve the public's need for blood testing. In fact, IBC faces stiff competition from various organizations, including but not limited to the American Red Cross. Thus, any allegation that "the citizens of Indiana will suffer irreparable harm" is not only unsupported, it is utterly without merit.

Further, IBC's "loss of testing customers" and "loss of associated revenue" are not evidence of irreparable harm to the public interest. (Pls. Mem. at p. 10). They are harms suffered by IBC, not the public, and are fully compensable by monetary damages, if indeed IBC is entitled to be compensated at all. Therefore, IBC cannot demonstrate a harm to the public interest should the injunction be erroneously denied.

**B.  Ortho Will Be Harmed If The Injunction Is Erroneously Granted.**

Were the Court to balance the harms to each party, it should consider the harm Ortho will likely suffer if the Court erroneously grants IBC's motion for preliminary injunction. IBC intimates throughout its Motion and Memorandum in Support that it cannot absorb the cost of the testing kits at their market rate because it is a nonprofit organization operating on a "very thin margin." (See, e.g., Pls. Mem. at pp. 9, 10). IBC states, "If it were ultimately found that the injunction should not have issued, OCD's damages… would be simple to calculate." (Pls. Mem. at p. 10). Simple to calculate, perhaps, but impossible to collect. As IBC alleges, Ortho provides the testing kits to participants under the Agreement at a price substantially lower than their market value. Should the Court erroneously grant the preliminary injunction, and Ortho ultimately were to prevail on the merits, Ortho would be left in the unenviable position of attempting to collect potentially millions of dollars in damages from a nonprofit organization with "thin margins". If the possibility that a defendant will become insolvent prior to an award of damages tips the scales in favor of granting an injunction, *Roland,* 749 F.2d at 386, the

likelihood that the movant will not be able to repay the difference in value it undeservedly retained should tip in favor of denial. Because Ortho will be harmed by the erroneous grant of the preliminary injunction more than IBC will be harmed by its erroneous denial, the Court should deny IBC's motion.[5]

## CONCLUSION

Preliminary injunctions are extraordinary remedies, not to be granted except in the clearest of cases. IBC cannot carry its burden to demonstrate such a far-reaching remedy is warranted here. For all of the foregoing reasons, Ortho respectfully requests the Court deny IBC's Motion for Preliminary Injunction.

Respectfully submitted,

Date: August 28, 2009

ORTHO-CLINICAL DIAGNOSTICS, INC.

By:    /s/ Thomas F. Hurka
      *One of Its Attorneys*

Thomas F. Hurka
MORGAN LEWIS & BOCKIUS, LLP
77 W. Wacker Drive
Chicago, IL 60601
Telephone: 312-324-1735
Facsimile: 312-324-1001

*Counsel for Defendant*

---

[5] IBC devotes a portion of its Memorandum to addressing the fact that the Agreement provides for the right of the parties to pursue injunctive relief. Ortho acknowledges the same, but rejects any implication that such provision somehow lowers the standard, or absolves IBC of its burden, to demonstrate that injunctive relief is appropriate.

# CERTIFICATE OF SERVICE

I, Thomas F. Hurka, an attorney, hereby certify that on August 28, 2009 I electronically filed Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

James A. L. Buddenbaum
Michael L. Schultz
Erin Casper Borissov
PARR RICHEY OBREMSKEY FRANDSEN
& PATTERSON, LLP
201 N. Illinois Street, Suite 300
Indianapolis, Indiana 46204
Telephone: 317-269-2500
Facsimile: 317-269-2514

*Counsel for Plaintiff*

                                                           /s/ Thomas F. Hurka